May it please the Court, Tom Cotter for Gina Gonzalez. I'd like to reserve two minutes for rebuttal. Okay. The FBI received advance notice of a planned home invasion in which Ms. Gonzalez's 9-year-old daughter and her husband were murdered and she was shot twice and left for dead. And the issue before the Court is whether the FBI is immune for its decision not to pass on that information to local law enforcement in Arivaca, Arizona, where the home invasion occurred. The second issue is whether the judge abused her district court, abused her discretion in failing to allow discovery into exactly what chain of events resulted in the failure of the FBI to pass on that information. Let me ask you, because you said something in the beginning and I want to be clear about what the complaint is alleging. So the theory in this case is that the FBI agent obviously received the information, received the map, lost the map. That the FBI lost the map. Yes. The FBI lost the map. But that the FBI made the conscious decision not to inform local law enforcement. No. Okay. That last item is why discovery was required. And under the case law, it is the government's burden to prove the applicability of the discretionary function. What is your theory in the case? Because you said that the FBI made the decision, you just said the FBI made the decision not to notify. Well, then I misspoke, Your Honor. Okay. My theory of the case is that we were prevented from actually learning those facts which resulted in the information about the planned home invasion not being passed on. And as our briefing said, there were alternatives that could have occurred. Okay. You know, the first alternative was that the decision was made to pass it on and it got frustrated when the map was negligently lost. Because we know that the decision was received, the information wasn't passed on, and the map was lost. Those facts are known and alleged why we were frustrated from learning. And we went at some length in talking about the fact that the FBI file was provided to the defendants for their criminal prosecution, but the FBI actually appeared or the Department of Justice appeared in Arizona court to prevent the claimants from getting that information. The second thing that could have happened is the information could have been passed on or received by Agent Anderson and in some analog to the Lazy Guard line of cases, he could simply have not dealt with it. And there's a variety of things. He could have been unaware because of poor training that he was supposed to go through that analysis. He could simply, to use the example from Colthart, he could have gone on a smoke break and just simply never done that analysis. Or — Is it your theory that Anderson is the problem here or that Anderson satisfied his obligations under the guidelines of somebody in Phoenix? Our theory, Your Honor, is that we simply don't know the answer to that. We know that the FBI became — received this information, it wasn't passed on, and a map was lost. We — and we cited to the district court the policy that we believe required that information to be passed on, which I expect to be the subject of this appeal. But we were frustrated. We asked the court to allow us to do discovery to determine exactly what happened and exactly what policies the FBI applied. And I want to talk about the policies first. The district court did us a favor and made a particular point of emphasizing that the government took three separate positions down below. They initially said in their motion to dismiss, our discretionary function is established by case law. Then in their reply to our pleadings, they said that under 6C2 of the guidelines, that applied and created discretionary function. And then in the oral argument, they said, nope, it doesn't apply because this was an interstate conspiracy case, and so it wasn't outside the FBI jurisdiction. But even at that time, they did not go forward and say, hey, Your Honor, this is the policy that applied, even though the case law — and, Your Honor, that's the Ocran case, the Eleventh Circuit, that says they — the government has the burden of coming forth with the policies that applied. Now that I've clarified that we think we should have been allowed to do discovery, and I want to point out how that ties into the Young case that I just did a supplemental citation of authority, understands a different set of facts. But this Court held just four months ago that a summary judgment standard should be applied when the jurisdictional facts are intertwined with the liability facts, because basically that's case dispositive. And that's no different than what we argued down below. We said you've got to let us do discovery. You've got to give us 56F — 56D, excuse me, relief, you know, and let us take this discovery before we have to respond to this motion. And what is it that you want, precisely? We wanted to take a deposition of the party or have some statement of the party from the FBI. These are the policies that apply. And we wanted to take a deposition or learn through interrogatories exactly what happened to that information.     And that's what you're supposed to do when we don't have a conclusion. You want to talk to Anderson? You want to talk to Anderson's supervisor? Who do you want to talk to? I want to talk to the person who made the decision, and I'm not, unfortunately, in a position to say who that is. But Anderson would certainly tell me, I presume, he would certainly know that information. But then the issue then, or at least the government's issue and the trial court's issue was, okay. But, sir, are you entirely reliant at this point, assuming you get the discovery, on a sort of design implementation distinction? No. All right. So then what else are we looking at? Because it seems to me that this, certainly the theory about, so far as you've articulated it, I would say that what you're relying on is the notion that whatever may have been the case with regard to the decision under the then-existing guidelines, you would seem to be saying, well, that may be discretionary. No. No? All right. No. And I'm misunderstanding. I think that there were two, to characterize it, there were actually two sets of decisions. The first decision is credible and serious, which we believe are professional responsibility decisions. Was there some basis to believe the information that was given to the FBI was a wholly based? Well, I don't know why you have to call them professional responsibility. In fact, you could just say they're non-discretionary. I mean, that is. Not policy-based. But they are choice-based, but not policy-based. Then the second decision is one that we concede is policy-based, which is where this guideline says, okay, the FBI agent now has to either make full disclosure or, if he's concerned, is going to — But then there are a bunch of exceptions, and I don't know why those have gotten all lost in the shuffle here. Well — But they seem to have some policy component, or some of them do. Well, I agree. And the exceptions are, if you're going to harm an investigation, you're going to put a person in jeopardy. It's going to make a source not cooperate. Those are all spelled out. And I agree. Those are policy decisions. But at the end of the day, the policy decision that the FBI agent is left with is you can make full disclosure, or if you're bothered by these competing considerations, you have to make limited disclosure. If possible. If feasible. Wherever feasible. And I think possible is a better word. But that's a situation where if you find out five minutes beforehand that the crime is going to be occurred, you can't probably report it down in Arabaca. And I'd like to talk to the Court about the Weissach case, because I think that the government is going to talk about that. Weissach was the situation where the prosecutor was killed by the felon, and there was some reason to believe that might happen. And the analysis that this Court went through was, okay, the probation officer under the guidelines had to determine if there was reasonable foreseeability of a risk. That, I think, is similar to credible and serious. But then in the Weissach case, what this Court based its opinion on was in the guidelines that applied to the probation office, the probation office had the specific choice. You can make the decision not to report to the person at risk. You can increase supervision. You can deny the parolee his work. Or you can report. And this Court looked at those choices and said, yeah, those are policy-based choices, and so you have both choice and policy-based choice, and so that's subject to discretionary function. Why aren't there — why aren't there — there are just a number of very important adjectives or adverbs in the FBI guideline. Yes, Your Honor. Somebody is going to have to make a judgment about whether it's credible.  Not just whether it's information, but whether it's credible. Somebody is going to have to make a decision whether the purported criminal activity is serious. Somebody is going to have to make a determination about whether it's feasible. And then we don't — that's even before we've gotten to the exceptions. Why isn't it every step there, isn't there a call for some kind of judgment? Well, there is judgment, Your Honor, but it has to be judgment and policy-based judgment. It's a two-step analysis. And those are not policy-based choices. Just like whether driving 80 miles an hour is not a policy-based choice, but it is a choice, credibility, seriousness — But would you agree that whether this would compromise the source is a policy-based choice? Yes. But that's in the second part of the analysis. In the first part of the analysis, the agent has to determine credibility and seriousness. I understand that. Once that's determined, then the guideline creates two choices. It's basically a tree. And the two choices are full disclosure if you're not concerned about these other policy-based considerations — cooperation of a source, endangering someone. But if you are concerned about those, then it says limited disclosure to local law enforcement. The attorney general has already made the policy choice for the FBI agent. And the FBI agent is not entitled to undermine that choice by making policy-based considerations about whether or not credibility or seriousness. Suppose you found out that what Anderson did was, after he lost the map, lose the map and then say, well, I'm just not going to do anything. I'm not going to make any of these decisions because I don't have the map anyway, so no point. So you would say in that instance there's no discretionary exception? True. Because he has negligent implementation. But his decision, rather than make any of the discretionary decisions, he just decided not to make them. And that he doesn't have the authority to do. Okay. That's one way to analyze it. I would also say he made the decision to turn it over and then the map was lost. But I do want to correct one thing the Court said. We don't know if Anderson lost the map. It was lost, is all you know. It was lost. It may have been a file clerk that lost it, you know, for all we know. And that's why wouldn't this case, if the Court's going to make policy, wouldn't it be better to have a record? Let me just ask you a factual question. We don't have – I assume because the map is lost you don't have the map. We don't have the map. Do we know if the map actually had a house or just an area or what was on the map? Well, we don't know precisely. I have personally read a interview by one of the defense attorneys in the criminal case of Mr. Copley, but it's not particularly precise. It was a map to the house showing its relationship to the border and what have you. And I assume that there – It was to the house. It was to the house. But I don't have the map. I haven't seen it. And all we know is that Copley said – Because I thought that one of the things that's been said here is it wasn't to the house. It was simply an area. Well, I think that the government said in their brief was it didn't give an address, which as far as we know – Not that it didn't have a map that showed where the house was. Right. And as far as we know, it didn't give an address. But how he knows that, I don't know. I mean, there could have been an address written on the map for all we know. But his – If you want to reserve some time, perhaps you should do that. Thank you. Thank you. Thank you. May it please the Court. Steve Frank from the Justice Department on behalf of the Appalachian United States. I'd like to just go back to the basics because I think my brother here did a very nice job, but it's kind of going all over the place. In a discretionary function case, there's a two-step process that Galbert laid down. And I think it would be most helpful to the Court if I could walk you through the two-step process. Galbert says you look – To be truthful, I think we know what it is. Okay. Well, the Court has to respond to each one. The first step is whether or not there was discretion involved. And the second step is whether that discretion was policy-based or not. I think I heard counsel pretty much concede that the policy that they're relying upon, the attorney general guidelines, does allow for discretion. Suppose Anderson had this map and said, you know, I'm not going to do anything with it. I'm just not going to make any of these decisions. I'm just not going to do it. Does he have authority to do that? Does he have discretion to do that, just not do anything, just put it in a drawer? Well, are you asking about the map or are you asking about passing on this information? All right. Let's talk first about passing on the information. You know, I'm just – I'm not going through anything. I'm not going to think about it. I'm putting it in a drawer. If one looks at the guideline, and I believe plaintiff's counsel conceded this, that the guideline is, as the core Eleventh Circuit in Ocran said, is laden with discretionary language. I understand that, but he didn't do any of the discretionary. He just put it in a drawer. He just said, you know, I heard that, but I don't care what they said. I'm not going to think about it. I'm not going to decide whether it's credible. I'm not going to decide whether it's serious. I'm not going to decide whether any of the exceptions apply. I'm just not doing anything. The courts are clear, including this Court, that it doesn't matter what he thought about, what his subjective intent was, and that's why there's no need for any discovery, and that's why there rarely is discovery in discretionary exception cases. The courts are clear that you look at the language of the policy and you see whether it allows the agent to exercise discretion. In this case, he is only supposed to pass on the information if, in his discretion, he thinks it's serious, he thinks it's credible, he thinks it will not harm witnesses, he thinks it will not harm ongoing investigations. So your understanding is that if you have a potentially discretionary decision but you exercise no discretion with regard to it, in fact, you don't follow the guideline that says that you shall do this or you shall do that, you do nothing. That the discretionary exception still applies. Absolutely. And that's just not my opinion. That's the opinion of most of the courts. The courts say, at Herbush and this circuit said specifically, that you do not have to make, the government does not have to make an actual showing of a policy decision or an actual showing of a decision being made. The Court is only to look at the language of the policy and see whether it allows for discretion. But I'm saying something a little different than that. That is the law. If the policy requires you to make a decision along certain lines and you don't make it, in other words, there is a mandatory policy here, which is you're supposed to apply certain criteria and make a decision. So it's not simply that there is discretion available, but it's outlined or directed discretion and you're supposed to at least do that. So there is something mandatory here. Make a decision in a certain way and you don't do it. Your Honor, with all due respect, that's not what the policy says. It doesn't say you must make a decision. The policy says you shall pass on this information and then it has discretionary language unless there is, if you decide it's serious, it's credible, and the effects of passing it on will not be adverse. It nowhere says that you have to make a decision. And the case law is, as I said, very clear. I would ask the Court to look at the case law, that the government does not have to prove that there actually was a decision. He can either, and the district court was correct in holding, the district court said, regardless of whether agent knew he could alert local law enforcement, negligently decided not to alert local law enforcement, or negligently lost the map, it's still covered by the discretionary function exception, because that's another point.   But I think that's a little different than that, too. But leaving that aside. So then there's the other end. Let's suppose that he made the decision to do this. He went through all the steps. And he said, yeah, I really need to alert somebody. And then he forgot or he lost a piece of paper or he or something. But his decision was to do it. And then somehow it didn't get done. Or maybe he even did it, he even did something to have it be done and the next person down the line didn't do it. Then what? Well, first of all, I think Your Honor is alluding and asks plaintiff's counsel about whether he was invoking sort of the design implementation theory. Yes, that's what I'm asking. And he disavowed that they were doing that. No, he didn't disavow it. He said not only. I thought he said no. No, he didn't say that. But my point would be that the Supreme Court and this Court repeatedly in this kind of case, in a law enforcement case, not in a design implementation case, has repeatedly said, Galbraith, and I think it's correct, that negligence is irrelevant to the discretionary function analysis. The Supreme Court said that in Galbraith. Alfrey, this Court in the Ninth Circuit, said that in a case. But we have these series of cases about, you know, safety signs on roads. Correct. Right? Where we, as I understand and what we've said is, you know, deciding whether to put the safety sign on is one thing, you know, or the guardrail or whatever. But once you decide that there's supposed to be a warning and then there is negligence, i.e., the sign falls down and you don't replace it or you put it in the wrong place or you say the wrong thing, then that's not discretionary. Now, why is this different? Well, first of all, I, just as an aside, I recognize the Court's, this Court has made those cases. I would say that they are hard to reconcile with Galbraith's clear holding that negligence plays no role in the discretionary function. But having said that, and Your Honor is correct, that this Court has made an exception in a certain series of cases. Those cases involve usually national parks, forests, roads, warning signs. And I would urge this Court to leave that exception in that area and not spread it over into the law enforcement exception. There is not a single case in which this Court has taken that exception, that design and implementation, and applied it in the law enforcement exception or example or instance. As a matter of fact, the courts have explicitly rejected. This case Can you give me your reasoning? I mean, usually if we're going to treat cases differently, we should have a reason. What's the reason? This case is governed. There are four cases in this Court. Alfrey and Wissich are cases that are directly on point. They don't involve sawing in a national forest. They involve there was a threat to somebody and whether or not the government passed on that threat or did anything. In Alfrey and Wissich, the Court explicitly said negligence is not an issue. The Court rejected plaintiffs' argument about professional judgment versus policy judgment. The Alfrey Court controls this case as does the Wissich case, as does SABO, which says in law enforcement investigations, that's what this is. FBI received a tip. Are they going to investigate it or not? That negligence does not play a role. And then the Ocran case out of the Eleventh Circuit. So I would strongly urge the Court not to expand the exception that the Court has made in this premises liability safety area into law enforcement. If I may ask just a couple hypotheticals so I can understand your position. And obviously I'm not saying this is what Agent Anderson did, but just to think this through. Let's assume first Agent Anderson receives the information and he decides I'm going to flip a coin. Heads, I tell the local sheriff. Tails, I don't. Comes up, comes up tails. Sheriff is never notified. You would say in that instance discretionary function and we're done. Absolutely. And I don't just say it. The Supreme Court in Galbert, this Court in all of its discretionary function cases makes clear that what is important is not whether there was an actual weighing, but whether the decision was, and this is the famous phrase, you read it over and over again from Galbert. Whether the decision was susceptible to policy analysis. Not whether it was conducted, not whether it was thoughtful, not whether it was negligent, but merely whether it was susceptible. But the case law, as I understand it, does say that if the agency has essentially exercised the cabinet's own discretion by creating mandatory responsibilities, then somebody operating under those directives, once the discretion has been exercised, is not acting as a, is not doing a discretionary function. Is that right? Some decisions of this Court in the national parks, forest area have so held.  It's not just the national forest. I do not know of a single law enforcement case where that was held. And quite the contrary. In Alfrey and in Wissage, they did have certain responsibilities. And in Sabo, they were phrased in mandatory language. In Alfrey, it said that if a person sees a violation of prison rules, it shall file an incident report with the prison. But the courts held that that was discretionary and even though it wasn't filed and even though later the threat that was made was carried out and another prisoner was killed, that even if there had been negligence, even if they had taken overall safety responsibility, but they negligently failed to file this report or they negligently carried out the search of the cell, it still was barred by the discretionary function exception in the law enforcement area. Okay. And if I could get back to my second hypothetical. Yes, sir. Same facts, same information. The agent says, you know what, I don't like Mexicans. I don't like people who live down there. I hope they kill each other. And if they were white, I would tell them. But because they're Mexican, I'm not. Now, of course, I'm not suggesting that's what he said. Right. So if someone exercises a decision based on racial bias or something like that, you have the same answer? I think so. I mean, I think the answer is not, and on a basis, obviously that would be a terrible decision if he made it on that basis. But I think that the overall premise of the courts is that the subjective reasoning, the motivation, whatever, is irrelevant. There are two questions this Court must answer. Was it discretionary? And here, I think there's no question that there was plenty of discretionary decision-making. And was it policy-based? Do you think the credibility and seriousness aspects are discretionary? Oh, absolutely. The FBI gets the FBI gets hundreds of tips every day, and they have to decide based upon their experience. I mean, is this a credible one? Is it serious? I mean, in this case here, they had to look at this woman who I think was living in Washington, D.C. and say? Is it at stage two a policy that is covered? It is precisely. It certainly requires judgment. But does it require the kind of judgment that's covered here? Yes. I can't think of a more policy-based area than a criminal investigation. And that is Alfrey relying upon Sabo and relying upon Wieser held that when people make a decision, and on the exact facts here, when they make a decision based upon  their experience, that that is policy-based. That's not what I asked you. That's not what I asked you. I'm sorry. I asked you whether those particular factors, i.e., credibility and seriousness, are within the kind of policy judgment that is covered by this discretionary act, not whether there might be other reasons. Absolutely. I don't see how one could say no. And I don't see what those cases have to do with that. I understand there might be other reasons. Well, they had to decide. They had to decide whether or not an investigation, a criminal investigation, everyone in an investigation, all FBI agents, assistant United States attorneys, Federal law enforcement officials have to decide whether witnesses are credible or not, whether they're serious or not. And those are policy-based decisions. This Court has held that a million times. I'd like to make one last quick comment. My time is running about this classic red herring of the so-called lost map. There's a lot I could say about it, but it wasn't what the government alleged about the map. It's what plaintiff failed to allege about the map. In its allegations in the complaint, plaintiff never said that the map showed a location. It said and alleged, only alleged, that it was an approximate location. Plaintiff never alleged that this map was given to the FBI before the home invasion. It could have been given after the home invasion. So if plaintiff and the Court want to waste the resources to go back and take a deposition about the map and find out that the map, in fact, was a red herring, that's fine and will simply prevail on summary judgment instead of a motion to dismiss.  Thank you. Thank you very much. Thank you, counsel. A couple points, Your Honor. Whether or not negligence is relevant to law enforcement cases and whether or not violation of a mandatory standard in a law enforcement case can create liability, the Elfrey case actually answers that question for us. There were three allegations of negligence in Elfrey. First, that there was supposed to be mandatorily, or at least they said there was a fact issue, whether it was mandatory to do an initial patient or prisoner assessment before they put the dangerous prisoner in with the cellmate. Secondly, once the threat was made, whether it was negligent not to take him out. Thirdly, when the decision to search was made, whether it was negligently conducted. With respect to the first, where there was a mandatory allegation, the Court remanded saying that there were disputed issues of fact that needed to be decided, and if it was mandatory, it could give rise to liability. With respect to the third, the negligent implementation issue was raised, and two members of the Court rejected it in that context. Judge Tashima, if I'm correct, dissented and said that, no, this was just simply a negligent implementation of a decision that was made, and that should create liability. And in that context, that was discussed. It has been discussed in a number of other contexts. Also in law enforcement, the Sabo case that the Governor relies on, there were allegations about whether the investigations, because that wasn't about a prisoner or a person being killed. It was about the investigation as to why he was killed and whether it created liability. Alitoson, can I get some clarification? In answer to your response to Judge Berzon's question during your opening, are you relying on the design implementation distinction? Are you relying on that theory? In part. We have alternative theories. That is one of them, yes. Okay. Because I understood you to say no, that you were not relying on it. No. We are absolutely relying on that because the decision may have been made to pass on this information to local law enforcement, which may have been frustrated by the loss of the map and because we were prevented from discovering or doing discovery we were not. Or by something else. Yeah. Or he could have simply negligently followed the guidelines. Or he could have actually told someone else who was supposed to communicate all of those things. And, Your Honor, I really want to urge, from the practitioner's standpoint, the Court just recently decided that these issues have to be based on a particular ized description of what was alleged, right? And in doing that, they said you should treat these as motions for summary judgment. You can't be throwing these cases out of court without discovery when law enforcement has the ability to keep all the facts to themselves. It's impossible to make this complaint. When we go to state court and said let us look at the file and the government comes in and says, oh, no, and we say to the Federal judge down below, let us do some discovery. And she says it would be futile. How could she possibly know it was futile? She noted that she didn't even know what the government was saying the policy was. How can they stop you from looking at a public file? Because the public file is not a public file. It was an FBI investigation file that was shared under Federal. It's not the file in the case. It's not the record. It's not on the docket. Not the record. No, it's not the docket. No. It is actually the FBI investigation file which was turned over to the prosecutors who shared it with the Defendant's counsel. We went to court to try to get it, and the government, the United States came in and said, nope. I'm going to use up your time. Thank you very much. Thank you, Counsel. The case of Gonzalez v. United States is submitted, and we're on to the last case of the day and the week, United States v. Vivian.
judges: Berzon, Bybee, Owens